748

Francis Marion **MUNSON, Plaintiff,**

v.

**LONG ISLAND RAILROAD COMPANY,**
Defendant.

Civ. 16987.

United States District Court
E. D. New York.
Feb. 20, 1961.

Otto M. Buerger, Jamaica, by James Treanor, New York City, of counsel, for the defendant, for the motion.

Nathaniel Kahn, Mineola, for the plaintiff, in opposition.

RAYFIEL, District Judge.

The plaintiff brought this action under the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries sustained by him on March 19, 1956, while employed as a ticket collector. The case was tried to the Court and a jury.

It was not disputed that the plaintiff sustained his injuries solely as a result of the defendant's negligence. The jury returned a verdict in his favor in the sum of $45,000. The defendant has moved "for an Order setting aside and vacating the verdict of the jury and judgment entered thereon and for an Order granting a new trial on the ground that the amount of the verdict is excessive."

The plaintiff is entitled to such an award only as will fairly compensate him for the injuries which he sustained. It was not disputed that as a result of the accident the plaintiff suffered a partial posterior dislocation of the coccyx in its relation with the sacrum and a "chip" fracture of the first coccygeal segment. He claimed that by reason thereof he suffered and still suffers considerable pain and is permanently disabled from performing his previous duties as a "railroad" man.

He has done little to obtain a correction of or relief from his condition. Aside from a visit to Dr. Rhodes, of the defendant's medical staff, to Dr. Ponemon, who took the x-ray which disclosed the fracture, and to Mary Immaculate Hospital where he twice obtained massage treatments, he has received no other medical attention, except three massage treatments and sitz baths administered by Dr. Consoli on June 23, June 30 and July 21, 1956, as a result of which he obtained relief, as appears from the said doctor's report, which was received in evidence as plaintiff's exhibit No. 6. He has had no medical attention since July 21, 1956.

Respecting plaintiff's claim that as a result of the said accident he was permanently disabled from performing his former duties with the railroad, it should be noted that he returned to his work immediately after he sustained his injuries, and continued in that employment until June 12, 1956, some three months later, when he left for his vacation. He failed to return to his employment with the defendant. In that regard, it should be noted, too, that the

plaintiff stated on cross-examination that he suffers pain only when seated, and it is obvious that his work with the defendant was not of a sedentary nature.

Dr. Graubard, who testified in the plaintiff's behalf, stated that the injury sustained by the plaintiff produced what is known as coccydynia, a condition accompanied by permanent considerable pain. When informed, however, that the plaintiff had obtained relief from the three aforementioned treatments by Dr. Consoli, he testified that that would indicate that the plaintiff's condition was then improving. Nevertheless he discontinued the treatments.

Dr. Graubard, who is an orthopedic surgeon of considerable experience, was of the opinion that the removal of the coccyx would correct the condition and eliminate the pain. He suggested to the plaintiff that he submit to such an operation, but he declined. He offered no explanation of his refusal. Pages 33–35 of the transcript of Dr. Graubard's cross-examination follow:

"Q. First of all, let me ask you this, what is the treatment for a man who has a dislocation or a fracture of the coccyx? A. If after the healing period from the acute trauma has subsided, and pain still persists, there are two or three—let us say three things that can be done: Number one, local injections of novocaine around the coccyx to deaden the pain. Sometimes that will cause it to go away. If you get a temporary relief you know the excision of that coccyx bone will give permanent relief.

"Q. By excision, you mean cutting it out? A. Yes: So the second thing is excision. The third is nothing, and they suffer with it.

"Q. Is some treatment generally given in addition to the injections and in addition to an operative procedure in these cases? A. Occasionally they try diathermy.

"Q. Massage? A. Sometimes massage will be of some benefit, as far as generalized pain, but then the localized pain, you never touch it with massage.

"Q. Well, if Mr. Munson, shortly after this accident, went to a doctor and if the doctor began to give him some treatment and if he began to show improvement under that treatment, is it your opinion, Doctor, that such treatment ought to be continued? A. Yes.

"Q. Did you know that in this case he had received treatment from Dr. Consoli consisting of sits baths and rectal massage, he said, on the 23rd of June, 1956, the 30th of June, 1956 and July 21st, 1956, and that he obtained some relief from the treatment? Did you know that? A. That I did not know. I knew he was treated by him, but I didn't know he obtained relief.

"Q. But if, in the course of three treatments by this doctor, he obtained relief, you as his doctor, if you were treating, would recommend that he continue that? A. That is correct.

"Q. In the hope that by continuing treatment the disability in turn would be taken care of? A. Yes.

"Q. When you testified here as you did, that at the time of the examination that you made of this man, I think you said that not only did you find pain in the area, but you found he had great difficulty in walking? A. Yes, sir.

"Q. I want you to assume that he says now, testified here today, that the only pain he has is when he sits. That would indicate some improvement? A. Definitely, yes."

The plaintiff admitted that he made no effort whatsoever to obtain employment, although Dr. Graubard stated, at page 36 of the transcript, that there were occupations other than railroading in which he was physically able to engage. It was obvious to the Court from the plaintiff's testimony, as to both its manner and substance, that he has no desire to return to work or to con-

tinue the treatments which had given him some relief after but three visits to Dr. Consoli. He appeared to be an intelligent man, and physically capable of obtaining and engaging in gainful employment. Instead, as he testified with some testiness, he spends a good part of the year vacationing in Florida or California, traveling by coach, which required him to spend the greater part of the day and night seated, the only time, he stated, when he suffers pain.

I am mindful of the fact that generally a trial judge should not substitute his judgment for that of the jury, but, in the light of the insubstantial and tenuous nature of the evidence by the plaintiff respecting loss or impairment of earnings, I am constrained to conclude that the verdict returned by the jury is so palpably excessive as to shock the Court's sense of justice and demand its reduction.

In the case of Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, the late Chief Judge Parker, in reversing a judgment on the ground of excessiveness, said at page 407: "Ordinarily, of course, the amount of damages is for the jury, and whether the verdict should be set aside as excessive is a matter resting in the discretion of the trial judge. This, however, is not an arbitrary but a sound discretion, to be exercised in the light of the record in the case and within the limits prescribed by reason and experience; and where a verdict is so excessive that it cannot be justified by anything in the record or of which the court can take judicial notice, it is the duty of the judge to set it aside. Failure to do so is an abuse of discretion, analogous to error of law and as such reviewable on appeal." And, at page 408, "The power and duty of the trial judge to set aside the verdict under such circumstances is well established, the exercise of the power being regarded as not in derogation of the right of trial by jury but one of the historic safeguards of that right." (cases cited).

The cases cited by the plaintiff are factually, or otherwise, clearly distinguishable from the instant case.

Defendant's motion for a new trial is denied upon condition that the plaintiff remit $15,000 of his recovery of $45,000; otherwise, it is granted.

The parties having stipulated to that effect, the execution of the judgment herein is stayed for a period of thirty days after the entry of the order hereon.

Settle order.